1
2
3
4
5
6
7
8
9
10

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NIKKI YIIAR WILKS,<br><br>       Plaintiff,<br><br>   v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>       Defendant. | Case No.  CV 14-07260-RAO<br><br><br>**MEMORANDUM OPINION AND ORDER** |

## I.

## INTRODUCTION

Plaintiff Nikki Yiiar Wilks ("Plaintiff") challenges the Commissioner's denial of her application for supplemental security income ("SSI") following an administrative law judge's ("ALJ") decision that Plaintiff was not under a disability within the meaning of the Social Security Act.[1]  Administrative Record ("AR") 24.

---

[1] Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment expected to result in death, or which has lasted or is expected to last for a continuous period of at least 12 months.  42 U.S.C. § 423(d)(1)(A).

1    For the reasons stated below, the decision of the Commissioner is REVERSED and
2    the action is REMANDED for further proceedings consistent with this Order.

3                                          **II.**

4                           **PROCEEDINGS BELOW**

5         On January 25, 2011, Plaintiff applied for SSI alleging disability on May 1,
6    2008 (her alleged onset date ("AOD")).  AR 31.  Plaintiff's claim was denied first
7    on March 22, 2011, and on reconsideration on August 31, 2011.  *Id.*  Plaintiff then
8    requested an administrative hearing before an ALJ, which occurred on August 21,
9    2012.  *Id.*  Plaintiff testified at the hearing, and was represented by counsel.  *Id.*  On
10   November 20, 2012, the ALJ found that Plaintiff was not disabled.  AR 24.  The
11   ALJ's decision became the final decision of the Commissioner when the Appeals
12   Council denied Plaintiff's request for review.  AR 1–8.  Plaintiff filed the instant
13   action in this Court on September 17, 2014.  Dkt. No. 1.

14        The ALJ followed a five-step sequential evaluation process to assess whether
15   Plaintiff was disabled.  20 C.F.R. §§ 404.1520, 416.920; *see also Lester v. Chater*,
16   81 F.3d 821, 828 n.5 (9th Cir. 1995).  At **step one**, the ALJ found that Plaintiff had
17   not engaged in substantial gainful activity since the AOD.  AR 33.  At **step two**, the
18   ALJ found the medical evidence established that Plaintiff had the following severe
19   impairments: bipolar disorder, manic depression; and status post left lung removal.
20   *Id.*  At **step three**, the ALJ found Plaintiff did "not have an impairment or
21   combination of impairments that meets or medically equals the severity of one of
22   the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  *Id.* at 34.

23        At **step four**, the ALJ found that Plaintiff possessed the residual functional
24   capacity ("RFC") to: "[P]erform medium work as defined in 20 CFR 416.967(c)
25   except: lift/carry 50 pounds occasionally, 25 pounds frequently; sit/stand/walk 6
26   hours of an 8 hour day; no public contact; occasional contact with coworkers and
27   supervisors; and only simple, repetitive tasks[,]" but found that Plaintiff was not
28   able to perform her past relevant work.  *Id.* at 35, 37.  At **step five**, however, the

1    ALJ found that Plaintiff could perform work existing in significant numbers in the

2    national economy and thus that she was not disabled pursuant to the Social Security

3    Act. *Id*. at 38.

### III.

### STANDARD OF REVIEW

6         Under 42 U.S.C. § 405(g), a district court may review the Commissioner's

7    decision to deny benefits.  A court must affirm an ALJ's findings of fact if they are

8    supported by substantial evidence, and if the proper legal standards were applied.

9    *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001).  Substantial evidence is

10   more than a mere scintilla but less than a preponderance.  *Id.* at 459.  It is relevant

11   evidence that a reasonable person might accept as adequate to support a conclusion.

12   *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998).  Inferences drawn from the

13   record may serve as substantial evidence, but only when *reasonably* drawn.  *See*

14   *Widmark v. Barnhart*, 454 F.3d 1063, 1066 (9th Cir. 2006).

15        To determine whether substantial evidence supports a finding, the Court must

16   consider the record as a whole, weighing evidence that supports *and* detracts from

17   the ALJ's conclusion.  *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001).

18   "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's

19   decision should be upheld."  *Ryan v. Comm'r of Soc. Sec.,* 528 F.3d 1194, 1198 (9th

20   Cir. 2008) (citation omitted).  If evidence can reasonably support either affirming or

21   reversing the ALJ's finding, the reviewing court may not substitute its judgment for

22   that of the ALJ.  *Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 882 (9th Cir. 2006).

23        The Court may review only the reasons stated in the ALJ's decision, and may

24   not affirm on a ground on which the ALJ did not rely.  *See Orn v. Astrue*, 495 F.3d

25   625, 630 (9th Cir. 2007).  The Court will not reverse the Commissioner's decision

26   based on harmless error, which exists only when it is "clear from the record that an

27   ALJ's error was 'inconsequential to the … nondisability determination.'"  *Robbins*,

28   466 F.3d at 885 (quoting *Stout v. Comm'r*, 454 F.3d 1050, 1055 (9th Cir. 2006)).

IV.

DISCUSSION

Plaintiff presents two issues: (1) whether the ALJ appropriately evaluated the opinions of treating psychiatrist Dr. Tim Garvey and consultative examiner Dr. Stephan Simonian; and (2) whether the ALJ erred in finding that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible.   Memorandum in Support of Complaint ("Pl. Memo.") at 4-10.

**A.   The ALJ Failed To Give Appropriate Weight to Dr. Garvey's Opinion**

Plaintiff contends that the ALJ erred by failing to give appropriate weight to Dr. Garvey's opinion.  Pl. Memo. at 4-7.  Specifically, Plaintiff contends that the ALJ improperly accorded more weight to Dr. Simonian's opinion.  *Id.* at 7.

**1.   Dr. Garvey's Opinion**

On September 10, 2011, Dr. Garvey completed a Mental Residual Functional Capacity Questionnaire regarding Plaintiff.  AR 282-86.  Therein, Dr. Garvey noted that he had seen Plaintiff every four to eight weeks since June 25, 2011, and that she had bipolar disorder but was responding to treatment.  AR 282.  Dr. Garvey listed four medications Plaintiff was taking, and noted that one of them, Seroquel, had caused side effects.  *Id.*  Dr. Garvey stated that Plaintiff's prognosis was good, but then proceeded to identify three signs and symptoms that she possessed: mood disturbance, psychomotor agitation or retardation, and emotional liability.  *Id.* at 282-83.  From his examination of how Plaintiff's mental and emotional capabilities were affected by her conditions, Dr. Garvey identified a number of areas in which Plaintiff would be limited in her ability to do daily work-related tasks in a regular work setting.  *Id.* at 283-84.

Specifically, Dr. Garvey identified three areas in which Plaintiff was unable to meet competitive standards—(1) dealing with normal work stress, (2) completing a normal workday and workweek without interruptions from psychologically-based

4

symptoms, and (3) working with—or in proximity to—others without being unduly distracted, *see id.* at 284—and another 12 in which Plaintiff was seriously limited, but not precluded. *Id.* at 284-85. Dr. Garvey ultimately opined that Plaintiff is an "emotional liability" who "easily reacts to stress and [is] easily confrontational[,]" that she has difficulty completing set goals, and that her impairments had lasted or could be expected to last at least 12 months; and estimated that she could miss up to four days of work per month due to her impairments or treatment. *Id.* at 285-86.

In addition to the questionnaire, Dr. Garvey also completed the Physician's Certification on Plaintiff's federal loan discharge application on September 10, 2011. AR 288. In that certification, Dr. Garvey noted that Plaintiff was diagnosed as having bipolar disorder and manic depression; is unable to sit, walk, or stand for long periods of time due to muscle spasms; had no reported problems with daily living activities; had periodic bouts of depression, but was compliant with treatment and eventually wanted to return to work; has occasional paranoid delusions; is anxious in social situations; and had a global assessment function score of 55. *Id.*

### 2.   **Dr. Simonian's Opinion**

On August 20, 2011, Dr. Simonian provided a summary report of a Complete Psychiatric Evaluation of Plaintiff performed upon the request of the Department of Social Services. AR 261. The only medical record Dr. Simonian reviewed prior to the evaluation was a questionnaire completed by Plaintiff, who was also the "source of information for [the] evaluation[.]" *Id.* Dr. Simonian first summarized historical background information, and then summarized his examination of Plaintiff's mental status. *Id.* at 261-64. Dr. Simonian noted Plaintiff was alert and oriented, her affect was mildly constricted, and her mood was mildly guarded and defensive; found no delusional thinking, hallucinations, suicidal ideation, or homicidal ideation; and found her intellectual functioning, memory, comprehension, and ability to perform calculations, concentrate, and think abstractly to be "intact and average." *Id.*

/ / /

Based on his examination, Dr. Simonian diagnosed Plaintiff with a mood disorder in partial remission and drug and alcohol abuse in remission, and classified Plaintiff's psychological stressors as being moderate. *Id*. at 264. In his functional assessment, Dr. Simonian found that Plaintiff's ability to understand, remember and carry out simple instructions, handle detailed and complex instructions, maintain concentration and attention, adapt to normal stress in a work environment, perform work activities without special supervision, and maintain regular attendance in the work place and perform work activities on a consistent basis were not limited. *Id.* at 265. Dr. Simonian found that Plaintiff was mildly limited in her ability to relate and interact with supervisors, co-workers, and the public. *Id.*

### 3. ALJ's Decision

The ALJ credited Dr. Simonian's opinion over Dr. Garvey's because "the opinions of Dr. Simonian are more consistent with Dr. Garvey's own treatment notes … showing that the claimant was doing well on her medication and had no complaints or side effects." AR 36. The ALJ gave four examples. First, on July 10, 2011, Plaintiff "stated to Dr. Garvey that she was good and denied depression." *Id.* Second, on September 4, 2011, Plaintiff reported to Dr. Garvey "that she was doing okay and was compliant with her prescribed medications." *Id.* Third, on October 1, 2011, Plaintiff "stated to Dr. Garvey that she was doing okay and trying to stay active." *Id.* Finally, on December 5, 2011, Plaintiff stated "that she was doing well on her medication and had no complaints or side effects." *Id.* Given the foregoing, the ALJ opined that Dr. Garvey's treatment notes "simply do not support a finding that the claimant was any more limited than found above." *Id.* The ALJ further opined that, if Plaintiff was as restricted as alleged, she would have reported those severe limitations to treatment providers; but instead she consistently reported that she was doing well when she took her prescribed medications. *Id.*

/ / /

/ / /

6

### 4.   **Analysis**

In Social Security cases, courts give varying degrees of deference to medical opinions depending on the type of physician who provides the opinion: (1) "treating physicians" who examine and treat; (2) "examining physicians" who examine but do not treat; and (3) "non-examining physicians" who neither examine nor treat. *Valentine v. Comm'r, Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009).   Most often, the opinion of a treating physician is given greater weight than the opinion of a non-treating physician, and the opinion of an examining physician is given greater weight than the opinion of a non-examining physician.   *See Garrison v. Colvin,* 759 F.3d 995, 1012 (9th Cir. 2014).   When a treating physician's opinion is contradicted by another opinion, the ALJ may only reject it by providing specific and legitimate reasons supported by substantial evidence in the record.   *Orn,* 495 F.3d at 633.   "An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings.'"   *Garrison,* 759 F.3d at 1012 (citation omitted).

An ALJ may discount a treating psychiatrist's opinion when it contradicts his treatment notes, *see Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008), but referencing minor inconsistencies is not a sufficient reason to reject it.   *Sprague v. Bowen*, 812 F.2d 1226 (9th Cir. 1987).   Nor may an ALJ selectively reference only non-representative treatment notes or portions thereof to support a conflict with the treating source opinion.   *See, e.g., Ghanim v. Colvin*, 763 F.3d 1154, 1162 n.6 (9th Cir. 2014) (ALJ's example of one note out of over one hundred pages of treatment notes not substantial evidence of a conflict between notes and treating providers' opinion regarding the severity of plaintiff's mental impairment).

Even if the treatment notes referenced by the ALJ could show a contradiction sufficient to discredit Dr. Garvey's opinion—they are insufficient here because the ALJ's summary is not complete.   On December 5, 2011, in addition to noting that Plaintiff said "she was doing well on her medication and had no complaints or side

effects[,]" Dr. Garvey also noted that Plaintiff was anxious, and asked for a change in her medication.  AR 309.  On October 1, 2011, in addition to noting that Plaintiff said that "she was doing okay and trying to stay active," Dr. Garvey also noted that Plaintiff had experienced "some panic attacks" and side effects to her medication. *Id.* at 310.  On September 4, 2011, in addition to noting that Plaintiff said "she was doing okay," and was taking her medications, Dr. Garvey also noted that she experienced paranoia and that she tried to "avoid social situations" because she was "afraid [of] what others think."  *Id.* at 311.  And the ALJ failed to mention that prior to the July 10, 2011 session where Plaintiff said that "she was good and denied depression[,]" a few weeks earlier, on June 25, 2011, Plaintiff told Dr. Garvey she was doing terrible, was a mess, was sleep deprived, had a poor appetite, and cried during the session.  *See id.* at 312-13.

Furthermore, given that Dr. Garvey was one of four treating sources who had seen Plaintiff since she started receiving treatment,[2] it is reasonably likely that he was aware of and had access to Plaintiff's prior and contemporaneous treatment notes, which are similarly interspersed with the type of negative notations expected in the context of a mental impairment, which tends to present episodically. *Delegans v. Colvin*, 584 F. App'x 328, 331 (9th Cir. 2014).  For example, Plaintiff told Dr. Stillion, who noted that Plaintiff was calm, relaxed, and cooperative, that she felt well while taking her medications on June 6, 2011.  AR 319.  Less than one month later, however, Dr. Stillion noted that "things [were] not going well" and that Plaintiff needed a psychiatrist appointment for medication changes.  *Id.* at 315.

At best, the treatment notes show that Plaintiff was improving, incrementally; but just because a person suffering from severe mental health issues exhibits *some* improvement does not necessarily mean that her impairments no longer affect her

---

[2] Plaintiff testified that she had seen three psychiatrists, Dr. Garvey, Dr. Madelli, and Dr. Stillion, and one therapist, Linda Rosetti, MFT, while being treated at Van Nuys Medical & Mental Health Services.  *See* AR 68-70, 308 (fax cover sheet for medical records).

ability to function in the workplace.  *See Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001).

Accordingly, the ALJ improperly discredited the opinions of Dr. Garvey on finding that they were inconsistent with selectively referenced treatment notes.

**B.    The ALJ Improperly Discredited Plaintiff's Testimony**

Plaintiff contends that the ALJ erred in concluding that her testimony was not credible based on the ALJ's finding that the objective evidence in this case does not show serious dysfunction.  Pl. Memo. at 9.

Once a claimant produces medical evidence of an underlying impairment that reasonably could cause the alleged symptoms, a claimant's subjective testimony as to their severity may be rejected "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so."  *Benton v. Barnhart,* 331 F.3d 1030, 1040 (9th Cir. 2003).  "General findings are insufficient[.]"  *Ghanim,* 763 F.3d at 1163.  An ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.  *Id*.[3]

Here, "[a]fter careful consideration of the evidence," the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms;" but found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the" assessed RFC because: (1) her complaints were not corroborated by the evidence, and (2) her ability to perform daily activities was not limited to the extent one would expect.  AR 36.  No malingering allegation was made, and therefore the ALJ's reasons must be "clear and convincing."

/ / /

---

[3] The ALJ may consider a range of factors in assessing credibility, including: (1) ordinary techniques of credibility evaluation (reputation for lying, prior inconsistent statements concerning symptoms, and testimony that appears less than candid); (2) an unexplained or inadequately explained failure to seek treatment or to adhere to a prescribed course of treatment; and (3) daily activities.  *Ghanim,* 763 F.3d at 1163.

### 1.   **Objective Evidence**

The ALJ found that the records did "not show the types of serious symptoms and dysfunction that would be expected were [Plaintiff] as limited as alleged," and thus gave her allegations little weight. AR 36. To support her conclusion, the ALJ found that, while Plaintiff "testified to severe mental health symptoms and has had ongoing mental health treatment, her treatment records … show that [Plaintiff] was generally doing well on her medications." *Id.* The ALJ specifically identified her December 5, 2011 visit, "the most recent psychiatrist visit in the record," at which she "reported doing well on her medication, with no complaints." *Id.*

Those findings are insufficient, however, because ALJs "may not single out moments of good health to discredit a claimant, *especially in cases involving mental impairments, which often present episodically.*" *See Delegans*, 584 F. App'x at 331 (emphasis added) (citations omitted); *see also Orn*, 495 F.3d at 630 (ALJ may not isolate "a specific quantum" of supporting evidence). Here, as noted in § IV(A)(4), while Dr. Garvey did note that Plaintiff told him that she was good, okay, and well, and that she was compliant with her medications and sleeping well, he further noted that Plaintiff said she had experienced panic attacks and paranoia (and, on June 25, 2011, stated that she was "terrible"; that she was a mess, sleep deprived, and had a poor appetite; and that she cried throughout the session); exhibited social avoidance tendencies and anxiousness; reported medication side effects, which could threaten her medication compliance;[4] and also requested medication changes. AR 309-13.

The ALJ's findings are further undercut by the proximity of Plaintiff's vague allusions to being good, okay, and well to more negative statements, and other such observations by treatment providers. *Cf. Morales v. Astrue*, 300 F. App'x 457, 459 (9th Cir. 2008) (plaintiff's "statement that she felt 'well' provides little evidence of

---

[4] On May 31, 2011, for example, Linda Rosetti, MFT, noted that Plaintiff "quickly became agitated over her suspicions about medication side effects. [Plaintiff] stated that this is why she doesn't take it as prescribed." AR 324.

improvement since she made a similar statement less than a week after leaving the intensive care unit).  For example, that Plaintiff told Dr. Garvey that she was good and denied being depressed on July 10, 2011 provides little evidence of her overall impairment status given the extremely negative comments made on June, 25, 2011.

## 2.   Daily Activities

The ALJ further found that Plaintiff testified to daily activities "that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations."  AR 36.  Specifically, the ALJ noted that Plaintiff testified that she "drives, walks her dogs, listens to music, reads, shops with her son, is able to walk to the store alone, and does everything in the house."  *Id.*  Plaintiff also stated that "friends come over to her home … [and] that she is able to prepare food."  *Id.*

Inconsistency between alleged symptoms and daily activities "may be a clear and convincing reason to find a claimant less credible."  *Hernandez v. Colvin*, 2013 WL 1245978, at *7 (C.D. Cal. Mar. 25, 2013) (citations omitted).  Here, however, most of the activities noted by the ALJ (such as driving, listening to music, reading, doing everything in the house, and preparing food) are clearly *not* inconsistent with Plaintiff's diagnosed conditions—nor her allegations of difficulties interacting with people.[5]  Further, the Social Security Act does not require claimants to be "utterly incapacitated" to receive benefits.  *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989).  Thus, the fact that Plaintiff grocery shops, walks her dogs, and occasionally entertains friends at home does not provide a clear and convincing reason to discredit her testimony.  *See Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012) (claimant need not "vegetate in a dark room" to receive benefits).

/ / /

---

[5] Plaintiff testified that "the reason why I'm not working for supermarkets is because … if a customer … say[s] something wrong to me that I'm offended by, we're going to have a problem…."  AR 61-62.  And Dr. Garvey noted that Plaintiff would be "seriously limited, but not precluded" in interacting appropriately with the general public and maintaining socially appropriate behavior.  *Id.* at 285.

11

Accordingly, the ALJ has failed to provide clear and convincing reasons for finding Plaintiff's testimony not credible.

## C.   <u>Remand Is Appropriate</u>

The Court has discretion to decide whether to remand for further proceedings or order an immediate award of benefits. *Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Under the credit-as-true rule, the court should remand for an award of benefits if three conditions are met: (1) the record is fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, be it claimant testimony or medical opinion; and (3) if such evidence were credited as true the ALJ would have to find the claimant disabled. *Garrison*, 759 F.3d at 1020. Here, the third condition is not met, as it is not clear that the ALJ would have to find Plaintiff disabled if Dr. Garvey's opinions were credited as true. Accordingly, remand is appropriate so the ALJ may consider whether Dr. Garvey's opinions, and Plaintiff's testimony, impact her original RFC assessment such that a finding that Plaintiff is, in fact, disabled is warranted based on the entire record. *See Harman*, 211 F.3d at 1179-81.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**V.**

**CONCLUSION**

IT IS ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter for further proceedings consistent with this Order.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED:  September 17, 2015

_____
ROZELLA A. OLIVER
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS, OR ANY OTHER LEGAL DATABASE.**

13